**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

UNITED STATES OF AMERICA,

      Plaintiff,

   vs.                                        CR 19-4275 WJ

CHARLES WARNER,

Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>DENYING DEFENDANT'S MOTION TO SUPPRESS</u>**

THIS MATTER comes before the Court upon Defendant's Motion to Suppress, filed December 28, 2020 **(Doc. 52)**. Defendant moves to suppress any and all evidence seized pursuant to a search executed on electronic devices seized from Mr. Warner on October 28, 2019. Having reviewed the parties' briefing and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

**BACKGROUND**

According to the criminal complaint, the ATF (Bureau of Alcohol, Tobacco, Firearms and Explosives) received information that Defendant was involved in the ongoing criminal possession, manufacture and distribution of firearms, despite his felony record. Doc. 1 (complaint). ATF determined that Defendant was operating an internet business called "Elite Warrior Armament" ("EWA") through Facebook, marketing customized 1911-style pistols. In 2016, ATF advised Defendant that as part of his business activities, he could not possess firearms. Doc. 59-1 (ATF Letter to Defendant). Due to the Defendant's ongoing non-compliance, ATF eventually revoked the Federal Firearms License of Elite Warrior Armament in

January 2018 for aiding and abetting a felon in possession of a firearm after it was discovered that Defendant was a silent partner in the business.

## I.      October 2019 Search Warrant / Arrest

From October 7, 2019 until on or about October 17, 2019, ATF Special Agent Sam Supnick ("Agent Supnick") made a series of undercover phone calls to Defendant inquiring about a potential firearms purchase, culminating in an agreement that Agent Supnick would go to Defendant's Rio Rancho residence on October 28, 2019 to provide $900 as a deposit for a customized 1911 pistol. This investigative action led to a search warrant issued by United States Magistrate Judge Kirtan Khalsa on October 22, 2019 for the Defendant's Rio Rancho residence. *See* Doc. 59-2 ("2019 Search Warrant").

On October 28, 2019, Agent Supnick arrived at Defendant's residence to submit the deposit as scheduled, was allowed inside the residence, and was shown a 1911 pistol frame and other components by Defendant. Once Agent Supnick gave Defendant the $900 deposit, Defendant was placed in custody and the search warrant was executed by other ATF agents who had been waiting outside the residence.  The search uncovered dozens of firearm components, metal working machinery, business records, ammunition and several electronic devices— namely, 2 computers and a cell phone.

Defendant was arrested that day and charged by complaint with felon in possession of a firearm. *See* Doc. 1.

On November 20, 2019, a grand jury returned an Indictment (Doc. 11) charging Defendant with two counts of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924; and one count of dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924.

II.     **June 2020 Search Warrant**

In June 2020, an additional search warrant was sought and issued by United States Magistrate Judge Steven C. Yarbrough, for the search of the two computers and a cell phone. Doc. 59-3 (2020 Search Warrant).

On June 11th 2020, Agent Supnick photographed and disassembled the computer towers, removing their hard drives. Images of the hard drives were later sent to an ATF laboratory in the State of Tennessee where they were processed to make the images viewable. They were returned to Agent Supnick and copies were provided to the defense. The phone could not be readily searched due to its security feature. The phone, an instrumentality of the crime, was powered on and a screen saver photograph of a firearm was observed by law enforcement.

## DISCUSSION

The Fourth Amendment to the United States Constitution requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement safeguards persons against "wide-ranging exploratory searches the Framers intended to prohibit. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). In general, a warrant meets the Fourth Amendment's particularity requirement "when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Harris,* 903 F.2d 770, 775 (10th Cir. 1990) (citations omitted). A warrant authorizing seizure of every single business record possessed by a business may be overbroad. *See Voss v. Bergsgaard,* 774 F.2d 402, 405–06 (10th Cir. 1985). When business records are sought, the warrant must be as particular as the information will allow. *Anderson v. Maryland*, 427 U.S. 463, 480 n.10 (1976).

Only two matters must be particular: the place to be searched and the things to be seized. *United States Wagner*, 951 F.3d 1232, 1247 (10th Cir. 2020) (citation and quotations omitted). The particularity of an affidavit may cure an overbroad warrant. *United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988). Additionally, broad and generic descriptive terms in a warrant may be valid if they are as specific as the circumstances permit. *Id*. at 600. The Tenth Circuit has found warrants phrased in "broad and generic terms of description" reasonable because the nature and characteristics of some criminal operations do not lend themselves to specific descriptions of things to be seized. *See e.g., United States v. Richardson*, 86 F.3d 1537, 1544 (10th Cir. 1996) (abrogation recognized on other grounds) ("The particularity requirement does not prohibit all intrusions. It prohibits only those intrusions which are not as limited as possible."). A defendant alleging violations of both the Fourth Amendment and Rule 41 of the Federal Rules of Criminal Procedure bears the burden of proof. *United States v. Garcia,* 707 F.3d 1190, 1196 n.4 (10th Cir. 2013).

I.      **Whether Initial and Subsequent Warrants Were Overbroad**

Defendant contends that the execution of the initial October 2019 was a "wholesale snatch and grab" of Defendant's documents and electronic devices that was both overbroad and without discretion, and violated the Fourth amendment.  He also argues that both search warrants fail for lack of particularity and scope.

*The October 2019 warrant*: identifies "Locations to Be *Searched*" as*:* Defendant's residence, vehicles and outbuildings. Doc. 52-1, Attachment A (emphasis added). Judge Khalsa authorized the *seizure* of "items or materials that may contain evidence of the commission of, the fruits of, or property which has been used as the means committing federal criminal violations of

[18 U.S.C. §922(a)(1)(A)]." Doc. 52-1, Attachment B (emphasis added). The list of items to be seized included "Business records" and Electronic devices." *Id.*

> *The June 2020 warrant*: identifies "Places to Be *Searched*" as:
>
> A.) Item #87: Cellular Telephone – Smart Phone (appears to be iPhone) . . .
>
> B.) Item #97. Asus desktop computer tower serial number . . . seized from Warner's residence by ATF and
>
> C.) Item #98: Hewlett Packard computer tower, serial number . . . seized from Warner's residence by ATF.

Doc. 52-2, Attachment A (emphasis added). In addition to a search of the items listed above, Judge Yarbrough authorized the seizure of "All records on the SUBJECT DEVICE described in Attachment A that relate to violations of [18 U.S.C. § 922(a)(1)(A)]. Doc. 52-2 (Attachment B).[1]

A.    Challenges to Initial October 2019 Search Warrant

Defendant claims that the initial warrant seeking the "blanket seizure" of business records was insufficiently precise because it essentially sought *all* records without any particularity to evidence connected to alleged criminal activity. A close inspection of the warrant undercuts this argument. Defendant acknowledges that in general, a warrant meets the Fourth Amendment's particularity requirement "when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Harris,* 903 F.2d 770, 775 (10th Cir. 1990) (citations omitted). Having acknowledged this, however, Defendant cannot legitimately argue that the initial search warrant authorized indiscriminate seizure of his business records. By its

---

[1] Defendant does not argue that the Government undertook a search of the electronic devices prior to the issuance of the subsequent search warrant, but rather limits his challenges to the particularity and scope of both warrants as well as the delay in between the first and second warrant. Even so, it would have mattered little had the computers been searched after the first search warrant was issued instead of after the issuance of the June 2020 warrant because there is "no authority finding that computer disks and hard drives are closed containers somehow separate from the computers themselves." *United States v. Grimmett*, 439 F.3d 1263, 1269 (10th Cir. 2006) (noting that the Tenth Circuit has "adopted a somewhat forgiving stance when faced with a 'particularity' challenge to a warrant authorizing the seizure of computers") (citing *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir.1998) (rejecting defendant's claim that computer disks and hard drive were equivalent of closed containers and required a second warrant to search them).

very nature, the statute identified in the October 2019 Search Warrant, 18 U.S.C. § 922(a)(1), imposed limitations on the nature of records to be seized: only records connected to matters relating to the making and sale of firearms. The seizure of Defendant's business records was thus restricted, within the warrant's specific terms, to a *particular* category of records.

Defendant relies on *Voss v. Bergsgaard* to argue that a warrant "authorizing seizure of every single business record possessed by a business may be overbroad." 774 F.2d 402, 405-06 (10th Cir. 1985). *Voss* does not apply here. First, the October 2019 warrant in this case was quite specific in the nature of the business records that could be seized and therefore did not authorize "every single business record possessed" by Defendant. Second, *Voss* is distinguishable. The statute cited in the search warrant at issue in that case was the conspiracy statute, 18 U.S.C. §371, which prohibits conspiracy to violate *any* federal statute law—which in effect placed no real limitations on seized items. 774 F.2d at 405 (noting that while the warrant referred to the general conspiracy statute, it was not couched in terms that clearly restrict seizure to evidence relevant to the violation of the statute and thus did not meet the Fourth Amendment's particularity requirement ").[2] By contrast, the October 2019 warrant was not overbroad because the §922(a)(1) statute referenced in its language relates to a specific criminal offense and directed the executing law enforcement officers to a particular category of records and documents. These officers were not (as Defendant contends) unfettered in their discretion to seize Defendant's business records.

---

[2] Defendant's reliance on *United States v. Leary* fares no better. In that case, the warrant authorized seizure of documents that were "typical of the documents kept by an export company" and related to "the purchase, sale and illegal exportation of materials in violation of the federal export laws." 846 F.2d 592, 600-01 (10th Cir. 1988). The court found that notwithstanding the warrant's reference to Section 371 (the federal conspiracy statute) as a limitation, such reference "does not constitute a constitutionally adequate particularization of the items to be seized." *Id*. at 601.

Defendant also claims that the officers were "unrestrained as to the time period within which the records must fall and that reference to §922(a)(1) was insufficient to provide any meaningful limitation to the search. The Government does not specifically address this argument, but the Court does not find the argument convincing since Defendant presents no case law addressing the *temporal* nature of search warrants.[3] Moreover, given the nature of the seized items on Attachment A in the warrant, *see* Doc. 52-1 (listing firearm parts, electronic devices, tools and machinery used in the manufacture or assembly of firearms; photos; video tapes), it would be somewhat impractical to require officers executing a search to hunt for some temporal indicia on the items seized. The relevance of a temporal connection between any of the items seized/searched appears to one more appropriately addressed on admissibility grounds and at a later time.

The Government also supports the seizure of Defendant's business records with the "permeated with fraud exception" to the particularity requirement. Under this exception, all business records can be lawfully seized if all of the business's records are likely evidence of criminal activity. *See e.g., United States v. Cooper*, 654 F.3d 1104, 1127 (10th Cir. 2011) (seizure of a broad array of documents was permissible due to broad scheme to defraud). Defendant argues that this exception does not apply here because the Government conflates "fraudulent" activity (to which the exception applies) with "illegal" activity (which impermissibly enlarges the scope of the exception). However, because the Court has determined that the initial search warrant was not overbroad and was sufficiently particular to meet Fourth Amendment requirements, there is no need to consider whether this exception applies.

B.      Challenges to Subsequent June 2020 Search Warrant

---

[3] Defendant again references *Leary* to argue that the warrant here was overbroad in terms of time period. *See* Doc. 52 at 4 ("In . . . *Leary,* the Tenth Circuit explicitly held that such a limitation was in fact, "no limitation at all."). However, *Leary* did not discuss the temporal scope of seized documents at all.

Defendant contends that the overbreadth of the second search warrant "is much worse" than the initial one, comparing the list of documents sought to a "laundry list of everything which could possibly be contained on the electronic devices."  Doc. 52 at 5.

The Court again is not convinced that the second search warrant failed the particularity requirement.  The list of items sought under this warrant is just not as much of a free-for-all as defense counsel suggests.  While the list does include generic information found on a mobile phone or computer (photos, text messages, emails, chats, documents and spreadsheets), seizure of these items is expressly limited—just as it was in the initial search warrant—to items relating to violations of 18 U.S.C. §922(a)(1)(A).  So, unless people generally are in the practice of saving documents, photos, messages and texts that relate to the making and selling of firearms (and the court would assume it is not), the June 2020 search warrant is not overbroad and sufficiently satisfies the Fourth Amendment's particularity requirement.

The Government contends that the "good faith exception" should apply to both warrants as an alternative argument in the event the Court finds that either warrant is invalid for lack of probable cause. *See United States v. Leon*, 468 U.S. 897 (1984); *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990) (government bears the burden of proving that its agents' reliance on a search warrant was objectively reasonable). Defendant raises no viable argument that the warrant was infirm, invalid or lacked probable cause and so the Court need not address this issue further.

Accordingly, the Court finds that neither search warrant was overbroad and that both warrants satisfied the Fourth Amendment's particularity requirements.

## II.     Insufficient Attenuation Between Initial Seizure and Subsequent Search

Defendant contends that the officers had not seized the electronic devices during the execution of an overbroad initial warrant in October 2019, they never would have had them in their possession and therefore never would have been able to submit them to a search based on the June 8, 2020 warrant.  Since it was the exploitation of the initial unlawful seizure that led to the subsequent general search, and the Government will be unable to show any attenuation between the initial seizure and search months later, all physical evidence recovered pursuant to the June 8, 2020 warrant must be suppressed.  *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (any physical evidence which is itself the result of an unlawful seizure is inadmissible unless it is sufficiently attenuated from the seizure); *see also United States v. Fox*, 600 F.3d 1253, 1260-61 (10th Cir. 2010) (consent to search not attenuated from illegal seizure because of no intervening circumstances).

Defendant's argument fails.  *Wong Sun* and its progeny applies only where the starting place is an *unlawful* seizure.  The Court has not found the seizure in either warrant to be unlawful, and so there is no need for further analysis on this issue.

## III.     Execution of Subsequent Warrant Was Unreasonable

Last, Defendant contends that the unexplained delay between the seizure of the electronic devices and their subsequent overbroad search was unreasonable and was prohibited by the Fourth Amendment. The Tenth Circuit has stated that "an unreasonable delay in obtaining a search warrant can sometimes violate the Fourth Amendment." *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013).  In addressing the timeliness of execution of a search warrant, the focus is whether there is still probable cause to support a search. *United States v. Garcia,* 707 F.3d 1190, 1194 (10th Cir. 2013).

The Fourth Amendment "does not specify that search warrants contain expiration dates." *United States v. Burgess*, 576 F.3d 1078, 1097 (10th Cir. 2009). In addressing the timeliness of execution of a search warrant, the focus is whether there is still probable cause to support a search. *Garcia,* 707 F.3d at 1194.  Even a substantial delay in the execution of a search warrant may be permissible when the evidence is still likely to be in the place searched. *Id*. at 1195. There is no bright-line rule regarding the time frame with which a warrant must be obtained; thus, in assessing the reasonableness of the delay a court must take into account the totality of the circumstances. *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013).

The Court finds that the eight-month delay between the two search warrants was not unreasonable. Defendant suggests that there is something improper about the eight-month delay between the seizure of the two computers and the time they were searched, yet does not express any prejudice or harm from the delay October 2019 seizure and the June 2020 search, or explain why that period of delay was unreasonable. *See United States v. Johns,* 469 U.S. 478, 487 (1985) (while police officers may not indefinitely retain possession of a vehicle and its contents before they complete a valid warrantless search, the owner of the property must prove delay in the completion of a search was unreasonable because it adversely affected a privacy or possessory interest).[4]

Once the computers in this case were seized on October 19, 2020, they remained in ATF custody until they were sent off to a forensic lab in Tennessee in June 2020.  The level and extent of probable cause remained the same in June 2020 when the computers were searched as it was the day they were seized.  *See, e.g., United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013) (finding no Fourth Amendment violation when computer search was executed five months

---

[4]  As a result of Defendant alleging earlier in the case that the computers contained information helpful to the defense, the Government provided a full copy of the hard drive to defense counsel.  Doc. 59 at 7, n.1.

after consent was given and when a second and a more thorough search was performed three years after securing custody of the computer); *see also United States v. Gregoire*, 638 F.3d 962-68 (8th Cir. 2011) (finding no violation in one-year delay in searching a laptop after seizure).

The Court therefore finds no reason  to suppress evidence resulting from the search of Defendant's two computers based on an eight-month delay between the seizure in October 2019 and the search in June 2020.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress **(Doc. 52)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE